## A. J. CARTWRIGHT, Trustee of J. H. Coney, deceased, *vs.* S. C. ALLEN & M. P. ROBINSON.

### IN EQUITY.    BEFORE JUDD, C.J.

### SEPTEMBER, 1882.

The borrowing of money by an executor, and the pledging by him of securities in his hands, held to be unauthorized: but the pledgees not being put upon enquiry as to the executor's misapplication of funds, and the misapplication not being fraudulent, the Court declines to compel the giving up of the securities by the pledgees.

### DECISION OF JUDD, C.J.

This is a bill in equity to compel the surrender of a note in favor of plaintiff's estate for $30,000, held by defendants as collateral security.

#### PLAINTIFF'S BRIEF.

The bill avers:

1st. The purport of Coney's will.

2d. The plaintiff's receipt of $13,137 from the executor, Edward Preston.

3d. Castle & Cooke's indebtedness to the estate on their $30,000 note, of which they have tendered payment, but said note is held by defendants (co-partners under the firm name of

Allen & Robinson) who, although requested, refuse to deliver it up, claiming that it was pledged to them by Preston as security for $15,000 loaned to him for the use of said estate; avers that this loan was neither required by the estate nor authorized by the will.

4th. Offer to pay defendant said loan of $15,000 (although denying its validity) on their giving up the said Castle & Cooke's note in order to divide the moneys of the estate according to the will; defendants refuse to accept this and continue to charge the estate interest on said $15,000, and to collect and appropriate the interest on said Castle & Cooke's note, and have appropriated $1230 of said interest towards payment of said $15,000.

Prayers: 1. For account.

2. Delivery of Castle & Cooke's note on payment of $15,000.

3. General relief.

The answer: That as to said first averments, defendants "know nothing," and deny all the allegations and say that said firm has not in their possession said note of Castle & Cooke, or any other note to which said complainant is entitled.

The answer is sworn to by S. C. Allen.

### EVIDENCE.

Defendant S. C. Allen under a *subpoena duces tecum* produced said note of Castle & Cooke, also two notes in favor of Allen & Robinson, as trustees, of $3000 and $12,000, signed by Edward Preston, executor, and dated respectively February 19, 1881, and January 21st, 1882, but refused to produce certain Kohala stock which he was subpœnaed to produce, and which he testified that he took as collateral for Castle & Cooke's note of $30,000.

Allen testified that he and Robinson did not hold the above notes, but that the trustees of James Robinson's estate held them. That he had never read Coney's will (although the record produced of his evidence at the probate of the will is that he read it, and the same record shows that he and Preston filed

their sworn petition for probate of the will). Allen also testifies that he kept the Coney estate accounts until he resigned as executor (that is, from the filing of the petition, October 22d, 1880, to the probate of the will November 23d, 1880). Also, that he took Castle & Cooke's $30,000 note and the Kohala stock from Coney as collateral for notes of Mr. Coney's for $500, $1500, which said notes were paid by this plaintiff after he took the trust. He denied that any one had offered to pay him the $15,000.

Atherton, of Castle & Cooke, testified that Preston some time last year told him he might pay the $30,000 at any time, waiving the three months required by its terms; also that Castle & Cooke, if called upon, would willingly have paid from $5000 to $10,000 on said note at any time.

Cartwright testified that he told Allen he should be ready to take up Preston's notes, but Allen said he would not take the money on them before they were due.

Hartwell testified that as attorney for Cartwright he offered Allen to pay him the money on the Preston notes, but it was refused.

Preston testified that he used the $3000 for the estate to build Levey's house, etc., but not the $12,000; that they borrowed the $12,000 to pay the heirs, but had not conferred with them about it specifically, when his attention was called to his accounts showing receipts more than enough to pay for the taxes and Levey's house before the date of his $3000 note; he says he first borrowed $1000 of Allen & Robinson and afterwards $2000, and then gave the $3000 note.

### POINTS FOR PLAINTIFF.

#### I.

As for the formal defense that these defendants hold these securities as trustees of James Robinson's will and not in their own right, that is a matter for a plea in abatement.

Story's Eq. Pl., §723, §732. And not to be raised by an answer. *Ibid,* §708.

#### II.

1. The will authorizes no borrowing of money for any purpose.

It requires the shares of Mrs. Coney and the others to be paid only after the payment of the debts. Preston and Allen both knew this, for they had presented the will for probate and must at least be presumed to have known its contents. Allen acted as executor *de son tort* until he resigned. The notes held by Allen bearing twelve and ten per cent interest were long overdue amounting to $——— in all. Both Allen and Preston knew that these notes should first have been paid. Castle & Cooke were ready at any time to pay enough to take these notes up.

Preston's accounts show that he took from Allen & Robinson $3000, December 22d, 1880, for interest on Castle & Cooke's note. He could have taken the same in 1881. Those accounts show that the money for Levey's house was paid January 29th, 1881 ($3110.68), before the $3000 note was made. No one could find authority in the will or in common sense for any of these doings. The estate has been kept unsettled and put to unjust and unnecessary loss by the course that was followed.

The executors account shows receipts (including $12,000 of Robinson's Trustees) ................................$26,391.00

Charges, including $1400 commissions and $5910.68 on account Levey's house, and $964.69 for purchase of land, none of which are authorized by the will ........................................................................ 14,321.60

$12,069.40
2,910.00

$14,979.40

This of itself shows plainly that the $12,000 loan was not required. It was not pretended to be used for the estate. Deducting the commissions, $140, and the items for the house and land which the will did not authorize, and $10,185.37 would remain, showing that the $3000 loan was not required, and that the 12 per cent notes with Allen and Robinson might have been paid.

2. The $12,000 note has a memorandum that it is given as

collateral security with Castle & Cooke's note for $30,000, with shares in Kohala Sugar Company now held by the said trustees for advances heretofore made to J. H. Coney and myself as executor aforesaid. This implies that the executors did not receive said $12,000 on that $12,000 note (it does not purport to have been for value received) ; but that he gave it merely for "collateral security." The inference is that after he was called on to pay over the money in his hands he got the $12,000. Certainly the defendants cannot expect the Court to say that the words above quoted mean anything but that which they purport to mean. Everything is then referred back to the $3000 note dated February 17th, 1881, which Mr. Preston says was for money of which a large part had been borrowed in the month of December, A.D., 1880, or just after Allen resigned as executor. When it is considered that Allen kept the estate's accounts up to November 23d, 1880, which show receipts of the estate amounting at that time to $4039, and outlays of only $395.25, giving a surplus of $3642.73, and when he knew that $3000 interest money was coming in December 22d from the Castle & Cooke's note, could he have supposed that a loan of $3000 was required for any purpose named in that will?

He knew it was not required to pay the notes held by him of Coney, for he did not wish and did not take the money for them.

### III.

On the facts in this case the law is clear. "One who receives the assets of the estate from the executor, knowing or having the means of knowing that he is thereby misapplying them, will be held as trustee for the estate. 3 Redfield on Wills, p. 228 n. 8, citing *Colt vs. Lasnier,* 9 Cow., 320.

So where one or two executors and trustees under a power in a will sold part of the real estate and took a mortgage payable to them jointly for purchase money. Afterwards one of them, without the knowledge of the other and when the money was not wanted for the purpose of the trust, sold and assigned such bond and mortgage and misapplied the proceeds and

failed, being largely indebted to the estate. It was held not to be a valid sale and transfer of the legal title, and that the purchaser could only claim to be protected in equity so far as the money or securities given by him to the trustee of whom he purchased could be shown to have been applied to the use, or in aid of the purpose of the trust."

*Ibid.*, p. 229, citing *Hestell vs. Bogert* 9 Paige, 52.

In *Atkins vs. Atkins,* 8 Allen, 15, it was held that shares held by a guardian and transferred by him in payment of a personal debt, may be pursued as a trust property in the hands of a purchaser having notice.

"The occasions for creating such contracts, pledges, etc., on behalf of the estate are so few, that slight circumstances of suspicion will be regarded as sufficient to put the mortgagee upon his inquiry. And in such cases if the fact was that the money was raised for private purposes by the executor, and this upon proper enquiry would have been ascertained by the party making the advance, he will stand in no better light than if he had received a pledge or mortgage of the effects of the estate upon the private account of the personal representative, and cannot enforce his security except to the extent that he can show that the money advanced by him actually went for the purposes of the estate in payment of the debts and legacies, or otherwise."

3 Redfield on Wills, p. 231, Sec. 5.

"When the purchaser has knowledge that the sale is not within the equity of the trust under which the power was created, he thereby assumes the hazard of seeing to the application of the purchase-money."

*Ibid.*, p. 233.

"Therefore, if an executor sells or mortgages personal assets for ready money or money to be advanced, the dealing *prima facie* is in due course of administration, but *prima facie* only; for if there is affirmative evidence that the purchaser or mortgagee had notice that the money was to be used for some purpose other than the settlement of the estate, the Court will regard the transaction as fraudulent, and will not allow it to stand."

2 Perry on Trusts, p. 446, §811; *Ibid.,* p. 447, §814; and see *Pendleton vs. Fay,* 2 Paige, 202.

The $1230 appropriation of the estate money to a note not due was, whether by mistake or not, a misappropriation, and of itself entitles plaintiff to a decree.

See also *Smith vs. Ayer,* 101 U. S. 327.

### DEFENDANTS' BRIEF.

The evidence shows that Coney in his lifetime deposited with defendants a note from Castle & Cooke for $30,000 as collateral security for money loaned to him; and that Edward Preston, executor of said Coney's will, borrowed more money from defendants, stating that it was for the use of said estate, and made a further charge upon the note of Castle & Cooke to secure the payment of the amounts advanced to him as executor.

The executor had the right to pledge the note of Castle & Cooke to secure the payment of the amounts advanced to him, and there is no equity in plaintiff's bill.

The general rule is that an executor has an absolute power of disposal over the personal estate of deceased, and the same cannot be followed by creditors, much less by legatees, into the hands of an alienee.

Williams on Executors, p. 796; *Whale vs. Booth,* 4 T. R., 625.

An executor may mortgage the assets of the estate.

Williams on Executors, p. 797; *Meade vs. Orrey,* 3 At. 239 (Hardwicke) ; *Scott vs. Tyler,* 2 Dick., 725 (Thurlow) ; *McLeod vs. Drummond,* 17 Ves., 154 (Eldon).

Title to personal property vests in executor. It cannot be followed into the hands of a purchaser unless there is proof of collusion.

*Sneed vs. Hooper,* 5 Am. Decis., 691; *Woods' Appeal,* 92 Pa. St., 379; *Hamrick vs. Craven,* 39 Ind., 241.

A power to sell for the purpose of distribution is a power belonging to an executor *virtute officii,* as well where the power is discretionary or absolute.

*Evans vs. Chea,* 71 Pa., 47.

A mortgage of assets by an executor is valid.

*Vane vs. Rigden,* L. R. 5 Ch., 663; *Perry vs. Gibbon,* L. R. 8 Ch., 141; *Cruikshank vs. Duffin,* L. R. 13 Eq., 555.

It is not incumbent on a mortgagee or alienee to see to the disposal of the purchase money, unless the trust is special.

Williams on Executors, p. 798; *Andrews vs. Sparahawk,* 13 Pick., 393; Story Eq. Juris., §1124 *et seq.*

The late case of *Carter vs. Bank of Lewiston,* 71 Maine, 448, is directly in point and supports this defense. An executor pledged stock belonging to the estate and gave his own note for the money, stating that it was for the purposes of the estate. The pledge was held valid and an action brought by administrator *de bon. non* for possession of the stock dismissed.

As to the duty of a person dealing with an executor to examine as to the condition of the estate and as to whether the debts are paid, see *Field vs. Schuffelin,* 7 Johns. Ch., 150, in which case Chancellor Kent says that in the absence of proof or knowledge of an intended misapplication, a person dealing with an executor is not bound to inquire into the state of the trust, because he has no means to support the enquiry, and he may safely repose on the general presumption that the executor is in the due execution of his trust.

## BY THE COURT.

The questions before me are whether borrowing of the money and the pledging the securities of the estate of J. H. Coney by the executor were authorized or necessary under the circumstances. I have already held in the Probate Court that they were not. The remaining question is whether the defendants, the pledgees, had knowledge of the want of authority of the executor in making transaction so that the securities can be recovered now.

I do not find that the defendants had such a knowledge of the condition of the estate and the nature of the trust, or that the nature of the transaction should have put them upon enquiry as to whether there was a misapplication intended.

The will authorized the payment of one-quarter of the personal estate over to two of the legatees after the debts were paid, and the defendants might have supposed that this was a discounting of the assets to effect this purpose, or to pay the debts with, for there is no evidence that defendants knew that the estate owed no other debts than to them.

In the case before me there was no fraudulent misapplication of the funds borrowed, they were merely held idle by the executor, and for that reason the Probate Court charged the executor with interest upon them and declined to allow his commissions upon the same.

The last case cited by plaintiff from the Supreme Court of the U. S., 101 U. S. 327, clearly establishes that assets of an estate can be recovered from parties who deal with the executor with a knowledge of his trust and his disregard of his obligations, or when one has reasonable grounds for believing that the executor intends to misapply the assets or is in the very transaction converting them to his private use. In the case there decided the executor raised the money, not for the estate or for the settlement of its affairs, but for the business of a commercial firm, and the Court held that persons dealing thus were bound to look into the authority of the executor.

I do not regard the endorsement upon the executor's note for $12,000 of the $1230 received as interest on the $30,000 note, which was stated to be made by mistake, as a misappropriation sufficient to find for plaintiff on the bill.

The fact that the executor, with funds in hand, allowed notes held by defendants to remain long unpaid is a matter between the trustee or heirs and the executor, for which defendants were not responsible.

*A. S. Hartwell,* for plaintiff.
*F. M. Hatch,* for defendants.
Honolulu, September 16th, 1882.